IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **AIZAR MAZARIEGOS**, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: DLB-20-2275 |
| **PAN 4 AMERICA, LLC**, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs Aizar Mazariegos, Ana Cecilia Ayala, and Carlos Alonso filed this lawsuit on behalf of themselves and other similarly situated individuals against their former employers, Pan 4 America LLC t/a La Baguette ("Pan 4 America"), Super Pasteles LLC d/b/a La Baguette ("Super Pasteles"), and Un Yong Lee, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and related state laws based on the failure to pay overtime wages. ECF 1, 8. Plaintiffs assert the FLSA claims as a collective action under 29 U.S.C. § 216(b), and they have moved for court-approved notice to potential plaintiffs and conditional certification of the action. ECF 17. Defendants oppose the motion, which has been fully briefed. ECF 17-1, 24, 28. A hearing is not necessary. *See* Loc. R. 105.6. Because plaintiffs have made a threshold showing that potential plaintiffs are similarly situated employees, their motion for notice to potential plaintiffs and conditional certification is granted.

I.     **Factual Background**[1]

From 2015 to Spring 2020, plaintiffs Mazariegos, Ayala, and Alonso worked at "La Baguette," a bakery in Hyattsville, Maryland. La Baguette bakery is the principal business of defendant Pan 4 America, a Maryland limited liability company organized in 2012, and Super Pasteles, a Maryland limited liability company organized in 2019. Defendant Lee organized both companies and owns and operates La Baguette.

The three plaintiffs performed different roles at the bakery. Mazariegos was the store manager. He supervised approximately 35 hourly employees. His supervisory responsibilities included creating employee schedules, disciplining employees, and handing out paychecks. His other duties included printing images on sugar paper for other employees to transfer onto cakes, taking pictures and videos of La Baguette's products for marketing and menus, and purchasing ingredients and supplies. He also, on occasion, baked and performed other manual tasks. Ayala was a supervisor. She supervised the cashiers and ensured the shelves and display cases at La Baguette were well stocked. When Mazariegos was not working, Ayala was the manager in charge. Ayala also provided La Baguette with Spanish-language media marketing. Alonso was a baker and pastry chef. He typically worked the night shift and was the person in charge of the night shift bakery workers and pastry chefs.

Plaintiffs assert that during the last three years of their employment, from 2017 until Spring 2020, approximately 30 to 40 other employees worked with them at La Baguette. These potential plaintiffs' duties included baking, decorating cakes, creating marketing materials and menus,

---

[1] Unless otherwise noted, the factual background is based on plaintiffs' allegations in their amended complaint and their declarations submitted in support of their motion for conditional certification. *See* ECF 8; ECF 17-2 (Mazariegos Decl.); ECF 17-3 (Ayala Decl.); ECF 17-4 (Alonso Decl.).

ordering supplies and ingredients, stocking shelves and display cases, servicing customers, receiving food and supply shipments, organizing food and other goods in storage, cleaning, and ringing up sales on the cash register. None of the potential plaintiffs was a manager or a supervisor.

La Baguette paid the named and potential plaintiffs by the hour. The company regularly directed its employees to work more than 40 hours per week, but it did not pay them one-and-one-half times the employees' hourly rates for the overtime hours. The payment scheme worked as follows. From 2015 until about April 2019, La Baguette paid its employees hourly wages every two weeks, partially in cash and partially by check. For each employee, the check was drawn from Pan 4 America's bank account. The check was usually for 80 hours (40 per week) at the employee's regular hourly rate. The cash payment was for the overtime hours worked. The cash payment compensated the employee at an hourly rate that was slightly higher than the employee's regular hourly rate but always less than one-and-one-half times the regular rate. Beginning in approximately May 2019, La Baguette paid the named and potential plaintiffs their hourly wages with two paychecks issued on the same day, one from Pan 4 America and one from Super Pasteles. The employees no longer received cash for their work. With the Pan 4 America check, La Baguette paid the employees at their regular hourly rate for the first 80 hours they worked in the two-week period (40 per week). With the Super Pasteles check, La Baguette paid the employees for the overtime hours they worked . The hourly wage each employee was paid with the Super Pasteles check was slightly higher than the employee's regular hourly rate but always less than one-and-one-half times that rate.

Plaintiffs seek conditional certification of the collective action on behalf of individuals who: (i) worked for La Baguette during the period August 2017 through the present; (ii) were paid as hourly employees by La Baguette; (iii) in at least one week during the period August 2017

through the present, worked more than 40 hours; and (iv) were paid by La Baguette for hours worked over 40 hours a week at an hourly rate that was less than one-and-one-half times their regular hourly rate.

## II.     Discussion

### A. The FLSA Collective Action Certification Process

The FLSA generally requires that non-exempt employees who work more than 40 hours in a week receive overtime pay at the rate of one-and-one-half times their regular pay rate. 29 U.S.C. § 207(a); *see Encino Motorcars, LLC v. Navarro*, --- U.S. ----, 138 S. Ct. 1134, 1138 (2018); *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1032 (4th Cir. 2020). Under the FLSA, an employee may file an action against an employer on his or her own behalf and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b); *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 757–58 (4th Cir. 2011). The statute establishes an opt-in scheme for "similarly situated" employees whereby they must notify the court of their intention to become a party to the action. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). If employees choose to pursue a collective action, as is the case here, they may seek court-approved notice to inform similarly situated employees that they may join the litigation. *See Hoffman–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989) (considering § 216(b) in context of ADEA action). "[D]istrict courts have discretion, in appropriate cases, to . . . facilitate[e] notice to potential plaintiffs" and to allow claims to proceed as a collective action. *See Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) (*quoting Hoffman–La Roche*, 493 U.S. at 169); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010).

4

When assessing whether an FLSA claim should proceed as a collective action, all district courts in this circuit traditionally have employed a two-stage process. *See Lancaster v. FQSR*, No. TDC-19-2632, 2020 WL 5500227, at *2 (D. Md. Sept. 11, 2020); *Syrja*, 756 F. Supp. 2d at 686; *Stacy v. Jennmar Corp. of Va., Inc.*, No. 1:21CV00015, 2021 WL 4787278, at *2 (W.D. Va. Oct. 14, 2021); *Mebane v. GKN Driveline N. Am., Inc.*, 337 F.R.D. 479, 485 (M.D.N.C. 2020); *Vazquez-Aguilar v. Gasca*, 477 F. Supp. 3d 418, 421 (E.D.N.C. 2020); *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 604 (S.D. W. Va. 2020); *Graham v. Hall's S. Kitchens, LLC*, 331 F.R.D. 619, 621 (D.S.C. 2018); *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 368 (N.D.W. Va. 2012); *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 298 (W.D.N.C. 2013); *Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009). In the first stage, usually initiated pre-discovery and often "referred to as the 'notice stage,' the court makes a 'threshold determination of whether the plaintiffs have demonstrated that potential plaintiffs "are similarly situated," such that court-facilitated notice to putative class members would be appropriate.'" *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 306 (D. Md. 2014) (quoting *Syrja*, 756 F. Supp. 2d at 686). If the Court determines the potential plaintiffs are "similarly situated," the action is conditionally certified and court-approved notice is sent to potential opt-in plaintiffs. *See id.* In the second stage, which typically follows the conclusion of discovery and begins with a motion for decertification, "the court engages in a more stringent inquiry to determine whether the plaintiff class is [in fact] 'similarly situated' in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action." *Syrja*, 756 F. Supp. 2d at 686 (quoting *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007)).

At the conditional certification stage, the Court conducts a "modest inquiry" and "make[s] a threshold determination whether the class is similarly situated." *Lancaster*, 2020 WL 5500227,

at *2–3.  In making that determination, the Court considers whether the plaintiffs and potential plaintiffs had similar job responsibilities and whether they were victims of the same unlawful policy.  *Blake v. Broadway Servs., Inc.*, No. CCB-18-86, 2018 WL 4374915, at *3 (D. Md. Sept. 13, 2018).  The Court may grant conditional certification if there are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Lancaster*, 2020 WL 5500227, at *3 (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)); *see also Montoya v. S.C.C.P. Painting Contractors, Inc.*, No. CCB-07-455, 2008 WL 554114, at *3 (D. Md. Feb. 26, 2008) ("[I]f all the employees were wrongly treated in the same way, this should be a factor in favor of a similarly situated finding."); *Marroquin v. Canales*, 236 F.R.D. 257, 260 (D. Md. 2006) ("[P]otential plaintiffs are 'similarly situated' when they together were victims of a common policy or scheme or plan that violated the law.").  All that is required at the initial certification stage is some evidence of "a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *Blake*, 2018 WL 4374915, at *3 (quoting *Shaver v. Gills Eldersburg, Inc.*, 2015 WL 5897463, at *9 (D. Md. Oct. 6, 2015)).

When deciding a motion for conditional certification, the Court considers the "substantial allegations" in the complaint and any affidavits or declarations.  *Lancaster*, 2020 WL 5500227, at *2–3.  The plaintiff must provide more than "vague allegations with meager factual support" to show the potential plaintiffs are similarly situated.  *Id.* at *3.  This Court has granted conditional certification based on "affidavits containing reports of statements by supervisors, which are not necessarily hearsay, as well as hearsay statements, such as those made by co-workers." *Id.* (citing,

6

*e.g.*, *Montoya*, 2008 WL 554114, at *3; *Marroquin*, 236 F.R.D. at 260; *Robinson v. Empire Equity Grp., Inc.*, No. WDQ-09-1603, 2009 WL 4018560, at *3 (D. Md. Nov. 18, 2009)).

At this stage, the Court recognizes that "the record is sparse" and applies a relatively lenient standard. *Id.* This lenient approach is necessary "to be consistent with the FLSA's purposes of promoting efficient joint adjudication of claims, lowering the costs of litigation to employee plaintiffs, and accounting for employees' natural reluctance to challenge an employer." *Id.* (citing *Hoffman–La Roche*, 493 U.S. at170).

Defendants ask this Court to break from 20 years of precedent applying the two-stage certification process in FLSA cases and instead follow the approach adopted earlier this year by the Fifth Circuit in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021). In *Swales*, the Fifth Circuit rejected the two-stage approach to collective action certification. The Court recognized "[t]he trial court's notice-giving role is pivotal to advancing the goals and evading the dangers of collective actions," *id.* at 435, but nonetheless found that the "amorphous and ad hoc [two-step certification] test provides little help in guiding district courts in their notice-sending authority," *id.* at 440. The Court observed that "nothing in the FLSA, nor in Supreme Court precedent interpreting it, requires or recommends (or even authorizes) any 'certification' process." *Id.* at 440. It held that, rather than adhere to a test for conditional certification, the district court should determine preliminarily "what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated'" and then allow relevant, preliminary discovery "to determine if and when to send notice to potential opt-in plaintiffs." *Id.* at 441. This approach, the Court held, "aids the district court in deciding whether notice is necessary" and "ensures that any notice sent is proper in scope—that is, sent only to potential plaintiffs." *Id.* at 442.

This Court declines the defendants' invitation to depart from the two-stage certification process.[2] The Fifth Circuit decision in *Swales* is not binding on this Court. Moreover, the facts that gave rise to the Fifth Circuit's rejection of the two-stage certification approach are quite different than the facts here. When the district court in *Swales* was presented with a motion for notice and conditional certification, the parties already had engaged in substantial discovery. In opposing the motion, the defendant, a trucking transportation company, presented evidence that the plaintiffs and potential opt-in plaintiffs, former and current truck drivers, were independent contractors and argued that the application of the "economic-realities test" for whether the plaintiffs were employees or independent contractors "would require a highly individualized inquiry" that would "counsel[] against certification." *Id.* at 438. The district court believed it could not consider evidence "related to the economic-realities test at the pre-notice stage because the test was a 'merits issue' to be dealt with after discovery was complete." *Id.* The court recognized that the plaintiffs may not ultimately be "similarly situated" because "each plaintiff would have to present different facts under the economic-realities test," but nonetheless conditionally certified a collective of "potentially thousands" of truck drivers. *Id.* The district court *sua sponte* certified its decision for interlocutory appeal. *Id.* at 439. On appeal, the Fifth Circuit held that the district court erred by failing to "consider the evidence relating to this

---

[2] The two-stage approach to certification of collective FLSA actions has been widely adopted in courts outside the Fourth Circuit. *See, e.g.*, *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008); *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 890–91 (N.D. Iowa 2008); *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007); *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 562 (E.D. Va. 2006); *Felix De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 662 (E.D. Pa. 2001); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 358–61 (D.N.J. 1987).

threshold question in order to determine whether the economic-realities test could be applied on a collective basis." *Id.* at 442.

None of these facts is present here. Plaintiffs filed their motion for notice and conditional certification one month after filing their amended complaint. Defendants have not argued that the 30 to 40 potential plaintiffs are independent contractors such that the Court would need to engage in a particularized analysis to determine whether each plaintiff is a covered employee. Unlike the district court in *Swales*, this Court can determine from plaintiffs' allegations and declarations whether they and potential plaintiffs are "similarly situated" for conditional certification purposes and whether to send notice of this action to potential opt-in plaintiffs. The Court finds that following the two-stage certification process here will promote the efficient adjudication of claims and lower the costs of litigation for the plaintiffs. *See Hoffman–LaRoche*, 493 U.S. at 170–71. In this case, conditional certification is a "useful case management tool." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) ("certification is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful case management tool for district courts to employ in appropriate cases").

### B. "Similarly Situated" Potential Plaintiffs

Plaintiffs have made a threshold showing that the potential plaintiffs are "similarly situated" employees. The plaintiffs and potential plaintiffs were paid by the hour. Defendants regularly required them to work more than 40 hours per week and did not compensate them for the overtime hours they worked, as required by the FLSA. According to plaintiffs' declarations, the defendants, from 2015 to April 2019, paid employees every two weeks with a check and with cash. The check was for 80 hours of work (40 hours per week). The cash was for any overtime hours they worked, but the cash payment never amounted to one-and-one-half times the

employee's regular pay.  From May 2019 until Spring 2020, the defendants paid the plaintiffs and the potential plaintiffs every two weeks with two checks; they were no longer paid in cash.  One check was payment for 80 hours of work (40 hours per week).  The other check was payment for overtime hours, but the payment never amounted to one-and-one-half times the employee's regular pay.  Contrary to defendants' claims, the allegations regarding the defendants' payment scheme are not vague.  They are clearly specified in the plaintiffs' declarations.  Mazariegos personally knows how each of the approximately 35 employees he supervised was paid because he was responsible for handing out employee checks.[3]  The fact that the defendants employed two different methods of payment—first by check and cash, then by two checks—is immaterial, particularly at the conditional certification stage.  What is material is that, regardless of the method of payment, the defendants did not pay the plaintiffs or potential plaintiffs for overtime hours at the rate of one-and-one-half times their regular hourly rate.  This amounts to a common unlawful policy that apparently applied to every employee.

Defendants argue plaintiffs are not "similarly situated" to the potential plaintiffs because they had different primary job responsibilities.  It is true that Mazariegos, Ayala, and Alonso had supervisory responsibilities, and the potential plaintiffs did not.  Indeed, Mazariegos was the store manager during his entire period of employment, and Ayala was the store manager when Mazariegos was not working.  Nonetheless, the plaintiffs performed, to varying degrees, tasks similar to those performed by the potential plaintiffs, such as baking, ordering supplies, and servicing customers.  Even though Alonso was in charge during the night shift, he performed the

---

[3] That Ayala and Alonso did not swear in their declarations that they have personal knowledge of how each employee was paid is inconsequential.  There is no requirement that every plaintiff have personal knowledge of every fact that could support certification.  Mazariegos's knowledge of how each employee was paid is sufficient for purposes of the pending motion.

same tasks—baking and creating pastries—as the other employees who worked overnight. While there is not exact overlap between the primary job responsibilities of every named plaintiff and every potential plaintiff, they did perform similar tasks from time to time. The potential plaintiffs' "positions 'need not be identical, only similar.'" *Robinson v. Empire Equity Grp., Inc.*, No. WDQ-09-1603, 2009 WL 4018560, at *2 (D. Md. Nov. 18, 2009) (quoting *Yeibyo v. E–Park of DC, Inc.*, No. DKC-07-1919, 2008 WL 182502, at *7 (D. Md. Jan.18, 2008)); *see also Blake*, 2018 WL 4374915, at *3 ("[W]hile the employees' responsibilities on the job are important to this analysis, the touchstone inquiry is the potential plaintiffs' common relationship to the allegedly unlawful policy."). Moreover, because this case involves only one store location and only 35 to 40 potential plaintiffs, the unmanageability that may arise with a large number of plaintiffs who have varying job responsibilities is not a particularly compelling concern here.[4]

Defendants claim this case is similar to *Andrade v. Aerotek, Inc.*, No. CCB-08-2668, 2009 WL 2757099 (D. Md. Aug. 26, 2009), in which the plaintiffs sought conditional certification of two potential classes and the Court granted the motion as to one class and denied it as to the other. The grounds for rejecting the potential class in *Andrade* are not present here, and the reasons for granting conditional certification of the other class are similar to the reasons for granting it here.

In *Andrade*, the Court refused to certify a class of recruiters and recruiting managers because their responsibilities, authority, and client contact differed too much for them to be

---

[4] Defendants claim that they considered Mazariegos and Alonso, both managers, exempt from the FLSA's overtime pay requirements and that Mazariegos "did not keep a record of his time." ECF 24-1 ¶¶ 5, 9 (Lee Decl.). This asserted defense to the individual claims of Mazariegos and Alonso is not grounds to deny conditional certification. The Court does not, at this early stage, consider the merits of the claims. *See Cummins v. Ascellon Corp.*, No. DKC-19-2953, 2020 WL 6544822, at *6 (D. Md. Nov. 6, 2020). Moreover, the defendants do not argue Ayala was an exempt employee. Therefore, even if Mazariegos and Alonso were exempt and could not represent members of the collective action, Ayala could.

11

similarly situated. *Id.* at *3. The Court granted conditional certification of a class of recruiter trainees because, in addition to "superficial similarities," they had a "common subjection to a policy of encouraging overtime work while forbidding the reporting of overtime hours." *Id.* at *4. The Court limited the potential plaintiffs to trainees in two locations, because there was evidence of the policy only in those two locations. *Id.* at *5. In this case, there is evidence that the plaintiffs and potential plaintiffs worked together at a single bakery and shared some job responsibilities. Moreover, there is evidence that all of them were subjected to a common scheme of failing to pay them for overtime hours at one-and-one-half times their hourly rate. Thus, the facts in this case are similar to those that supported conditional certification of the approved collective action in *Andrade* and dissimilar from those that resulted in rejection of conditional certification.

Defendants also liken this case to *Alderoty v. Maxim Healthcare Servs., Inc.*, No. TDC-14-2549, 2015 WL 5675527, at *8 (D. Md. Sept. 23, 2015), and *Forkwa v. Symbral Found. for Cmty. Servs. Inc.*, No. AW-11-03513, 2012 WL 6727134, at *2 (D. Md. Dec. 26, 2012), in which the Court refused to certify collective actions to include all potential plaintiffs identified by the plaintiffs. Those cases are distinguishable. In *Alderoty*, plaintiffs sought conditional certification of a class that included senior recruiters in the defendant's two lines of business, homecare and staffing. 2015 WL 5675527, at *1–2. The Court observed that "[i]n prior FLSA collective actions by Maxim recruiters filed in federal courts, Plaintiffs have typically sought or obtained conditional certification only as to Homecare Recruiters or Staffing Recruiters," not both. *Id.* at *6. The Court limited the class to homecare recruiters because the plaintiffs showed that these recruiters were similarly situated based on their job duties, work schedules, and pay, but failed to offer any evidence that the staffing recruiters were similarly situated to them. *Id.* at *6–7, *9, *11. In *Forkwa*, the Court refused to conditionally certify the proposed class because the plaintiffs did not

offer any evidence that the potential plaintiffs were subject to a common scheme. Here, in contrast to both cases, plaintiffs sufficiently established through their amended complaint and declarations that the potential plaintiffs are similarly situated because they shared some job responsibilities and were subject to a common scheme requiring overtime for which they were not properly compensated.

### III. Conclusion

Plaintiffs' motion for conditional certification is granted as to all individuals (i) who worked for La Baguette between August 1, 2017 and May 17, 2020;[5] (ii) who were paid as hourly employees by La Baguette; (iii) who, in at least one week during the period August 1, 2017 through May 17, 2020, worked more than 40 hours in any week; and (iv) who were paid by La Baguette for hours worked over 40 hours per week at an hourly rate that was less than one-and-one-half times their regular hourly rate.

Defendants are directed to provide plaintiffs, within 14 days of the accompanying Order, the names, last known addresses, home and cellular phone numbers, and work and personal e-mail addresses of those individuals who worked for La Baguette from August 1, 2017 through May 17, 2020.

Plaintiffs' motion for notice to the potential opt-in plaintiffs is granted in part. Plaintiffs may issue the Notice (ECF 17-5, 17-6), as revised to be consistent with this ruling, by first class mail, electronic mail, and text message and enclose the Consent to Join Lawsuit Form (ECF 17-7) and a self-addressed, stamped envelope. Because the class of potential plaintiffs does not

---

[5] Plaintiffs initially asked the Court to certify a class to include individuals who worked at La Baguette Bakery from 2017 through the present. After defendants correctly noted that none of the plaintiffs worked for them after May 17, 2020, plaintiffs stated they do not object to conditional certification of a class of potential plaintiffs employed by defendants from August 1, 2017 through May 17, 2020.

necessarily include current La Baguette employees, the Court will not require the Notice to be posted at the bakery unless plaintiffs show good cause for the posting after making diligent efforts to notify the potential plaintiffs by mail, e-mail, and telephone.

    A separate Order will issue.


Date: <u>October 28, 2021</u>　　　　　　　　　　　　　　　　　<u>　　　/S/　　　　</u>
                                                                                         Deborah L. Boardman
                                                                                       United States District Judge